**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 4, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CAROLYN MAY,

      Plaintiff-Appellant,

v.

TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA, a Connecticut corporation,
f/k/a The Travelers Indemnity
Company of Illinois,

      Defendant-Appellee.

No. 06-1531
(D.Ct. No. 05-cv-00214-WYD-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**MCCONNELL**, Circuit Judge.

---

Carolyn May, a Colorado resident and passenger injured in a motor vehicle

accident, sued the insurer of the vehicle, Travelers Property Casualty Company of

America (Travelers), a Connecticut corporation.  Mrs. May sought reformation of

the insurance policy for added personal injury protection (APIP) benefits in

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

conjunction with the now repealed Colorado Auto Accident Reparations Act, Colo. Rev. Stat. §§ 10-4-701 to -726 (repealed July 1, 2003) ("No Fault Act" or "Act"). In addition to her reformation claim, Mrs. May brought claims for breach of contract and bad faith. In an order on the parties' cross motions for partial summary judgment, the district court granted Mrs. May's request for reformation of the insurance policy as a matter of law but determined reformation was subject to a $200,000 aggregate per person, per accident, limit – as provided in the policy. In a second summary judgment order, the district court determined the effective reformation date of the insurance policy occurred on the date of the court's initial order on partial summary judgment, and therefore, all of Mrs. May's remaining claims involving bad faith and breach of contract failed as a matter of law because Travelers promptly paid the additional benefits due her following the court's reformation order. Mrs. May now appeals from the district court's summary judgment orders on issues held in favor of Travelers. On appeal, we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

As background, in 1973, the Colorado legislature enacted the No Fault Act for the purpose of avoiding inadequate compensation to victims of automobile accidents. *See Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1165 (10th Cir. 2007). The Act required complying policies to include certain minimum or basic

personal injury protection (PIP) benefits to compensate injured persons for medical expenses and lost wages. *Id.* This initial basic level of PIP included, but was not limited to, $50,000 for medical services per person for any one accident, regardless of fault, if performed within five years of the accident; and $50,000 for rehabilitative services per person for any one accident, regardless of fault, if performed within ten years of the accident. *See* Colo. Rev. Stat. § 10-4-706(1)(b)-(c); *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d. 1070, 1072-73 (10th Cir. 2007). By 1992, the Act also "allowed an insurer to offer an 'alternative to the minimum coverages' known as a 'reduced' PIP policy" which reduced the above coverage to up to $25,000 per person for any one accident for identified types of medical procedures, if performed within five years of the accident. *Stickley*, 505 F.3d at 1073 (relying on Colo. Rev. Stat. § 10-4-706(3)(b)(I) (2001)).

Also by 1992, § 10-4-710 of the Act required insurers to "offer," in exchange for higher premiums, optional APIP coverage. *See* Colo. Rev. Stat § 10-4-710(2)(a) (2001); *Stickley*, 505 F.3d at 1074. Specifically, § 10-4-710(2)(a) stated:

> Every insurer *shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages* described in section 10-4-706, at the option of the named insured:
>
> (I) Compensation of all expenses of the type described in section 10-

4-706(1)(b) without dollar or time limitation; or

(II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10-4-710(2)(a) (2001) (emphasis added). The Colorado Court of Appeals noted the directive of § 10-4-710 was to the insurer, not the insured, stating "all that is required is that the insurer offer these extended benefits." *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 554 (Colo. Ct. App. 1998).[1]

Section 10-4-710 also stated:

A complying policy may provide that all benefits set forth in section 10-4-706(1)(b) to (1)(e) and in this section *are subject to an aggregate limit of two hundred thousand dollars payable on account of injury to or death of any one person as a result of any one accident* arising out of the use or operation of a motor vehicle.

Colo. Rev. Stat. § 10-4-710(2)(b) (2001) (emphasis added). Based on this

---

[1] In *Brennan*, the insurer claimed § 10-4-710(2)(a) did not require APIP coverage be provided to pedestrians given the statute did not specify to whom the coverage was applicable. 961 P.2d at 553. The Colorado Court of Appeals disagreed, holding extended coverage applied to all categories of persons listed in § 10-4-707(1), including pedestrians, and that under § 10-4-710(2) the insurer must offer extended coverages to these persons. *Id.* at 554. Because the insurer did not offer APIP coverage which included pedestrian coverage, the court reformed the policy to include such coverage. *Id.*

language, "[s]ection 710(2)(b) permitted an enhanced policy to have an aggregate limit of $200,000 for any one person as a result of any one accident." *Stickley*, 505 F.3d. at 1074 n.5.

On November 26, 2001, Mrs. May was injured while riding as a passenger in a vehicle driven by her husband, Shawn May. At the time of the accident, she was insured as a "resident relative" under her husband's insurance policy with Travelers and entitled, under the Declarations provisions, to receive reduced or basic PIP benefits pursuant to the policy. Travelers paid the PIP benefits.

Following Travelers' payment of PIP benefits, Mrs. May sent Travelers a demand letter for APIP benefits, without a dollar or time limitation, which she claimed Travelers was required to offer by statute, but failed to do. After Travelers denied her claim for APIP benefits, she filed a complaint requesting reformation of the insurance policy to include APIP benefits, contending Travelers failed to meet the statutory requirement of offering her husband APIP coverage at the time he purchased the insurance policy, either by providing a written or oral explanation of APIP benefits or obtaining a signed application or selection form from Mr. May evidencing his knowledge of securing APIP benefit

coverage.[2] Mrs. May also brought claims for breach of contract, statutory bad faith, breach of the implied covenant of good faith and fair dealing, and common law bad faith, based on Travelers' denial of APIP benefits. Following discovery, the parties filed cross-motions for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure on Mrs. May's request for reformation of the policy for unlimited, aggregate APIP benefits.

In addressing the reformation issue, the district court determined no material facts were in dispute regarding the manner or circumstances surrounding Travelers' offer of APIP benefits to Mr. May. These facts established an employee who worked for an agent insurance company under contract with Travelers had a face-to-face meeting with Mr. May. Although she did not recall much of the meeting, she testified her normal procedure would have been to go over coverages with the insured and inform him that, in addition to basic PIP,

---

[2] Mrs. May also sought reformation for APIP benefits because the policy failed to include pedestrian and non-family occupants coverage, making the policy noncompliant with the No Fault Act. However, the district court denied this claim, explaining that even though Travelers failed to properly extend APIP benefits to pedestrians and non-family-member occupants, Mrs. May was not entitled to reformation of the policy on those grounds because she was not a pedestrian or non-family occupant seeking such benefits, but a "resident relative" already covered by the policy. Mrs. May did not appeal this issue. We further note the district court's decision is in accord with our holding in *Wilson v. Titan Indemnity Co.*, 508 F.3d 971, 973-74 (10th Cir. 2007) (declining to reform insurance policy for insured's own injuries because the insurer's alleged failure to offer coverage concerned only passengers and pedestrians).

"[t]here [were] other limits available if you wanted them at a premium." Apt. App. at 96-97, 490-91. When asked whether she was aware of the specific requirement that an insurer offer APIP benefits, she stated "[t]hat doesn't sound familiar." Apt. App. at 153, 491. While she did not provide Mr. May with any forms or documents, she testified her normal practice was to review available coverages with an applicant using her computer screen, which listed all available coverages, but did not describe them.

The undisputed facts also established Mr. May later returned to the same agency and met with another agent employee, who also did not provide Mr. May with any documents or forms, but testified it was his practice to inform customers that basic PIP was mandatory and APIP was available with an aggregate cap. He recalled Mr. May asked whether he had to take the basic PIP, to which the agent responded it was mandatory. The agent testified he also informed Mr. May other options were available and answered affirmatively when Mr. May asked if they "cost more money." Apt. App. at 107-08. According to the agent, Mr. May said he did not want to know about those other options because he wanted "to get in as cheap as [he could]" due to financial difficulties. Apt. App. at 108, 491. Nevertheless, the agent did sell Mr. May uninsured/underinsured motorist (UM/UIM) coverage, but in persuading Mr. May to buy it, the agent incorrectly stated such coverage was backup for not having enough PIP coverage.

A review of the Declarations portion of the insurance policy establishes Mr. May was issued a form of basic PIP coverage, described in the Endorsement portion of the policy under Section I(Q), with amended provisions under Section II(QA). Section I(Q) stated Travelers would: "[P]ay, in accordance with the Colorado Auto Accident Reparations Act [No Fault Act], personal injury protection benefits for an 'insured' who sustains 'bodily injury.' The 'bodily injury' must be caused by an accident arising out of the use or operation of a 'motor vehicle.'" Apt. App. at 18, 31, 123. Section IV of the policy's Endorsement portion described "Added Personal Injury Protection Options," and stated: "If an Added Personal Injury Protection Coverage Option 'R' is shown on the Declarations, the provisions of Section I are amended as follows, but only with respect to any amounts payable thereunder because of 'bodily injury' to an 'insured' who is a 'named insured' or 'family member.'" Apt. App. at 18. Section IV then briefly described the medical and work loss options available under APIP coverage, and stated: "The maximum aggregate amount payable for medical expenses, rehabilitation expenses, work loss, essential services expenses, and death compensation combined for Personal Injury Protection and Added Personal Injury Protection Benefits shall not exceed two hundred thousand dollars ($200,000)." Apt. App. at 38. As evidenced by the Declarations provision and other facts presented, Mr. May never purchased the APIP coverage described in the Endorsement section of his policy.

In applying the relevant law to the circumstances presented, the district court noted § 710 of the No Fault Act required Travelers to offer Mr. May APIP coverage but that neither § 710 nor the other related statutes defined the manner in which such an offer must be made. While § 710 did not expressly require insurers to provide a written explanation of APIP benefits or obtain a signed selection form, the district court determined, under the Colorado Supreme Court's decision in *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905, 913 (Colo. 1992), such facts may be relevant in determining whether an offer of APIP benefits was made in a commercially reasonable manner calculated to permit the potential purchaser to make an informed decision.

The district court found Travelers, through its agents, made an offer of APIP benefits by informing Mr. May additional APIP coverage was available for an additional premium. However, the district court found no evidence establishing Travelers provided Mr. May with a quote for APIP benefits, a PIP selection form or other written materials describing APIP benefits, or a substantive written or oral description of available APIP benefits. Rather, it found Travelers persuaded Mr. May to purchase UM/UIM coverage on the incorrect premise it would provide backup coverage for his PIP coverage. Based on these circumstances, the district court found Travelers did not communicate its offer of APIP benefits in a manner reasonably calculated to permit the potential

purchaser to make an informed decision, as required under *Parfrey*, and therefore, Mrs. May was entitled to reformation of the policy as a matter of law for additional coverage. Neither party disputes this decision on appeal.

Turning to the amount of APIP benefits available, the district court considered Mrs. May's argument for unlimited aggregate benefits and Travelers' counter-argument that such benefits should be capped at the $200,000 aggregate limit set out in the policy. In rendering its decision, the district court noted that by statute the policy was in compliance with the law since it capped the total aggregate amount payable at $200,000 – the same cap amount sanctioned in § 710(2)(b). It then pointed out the policy described Travelers' liability for PIP benefits as applying to bodily injury sustained by any insured in any one motor vehicle accident, and therefore, the basic PIP liability limits would be replaced with the $200,000 aggregate limit applicable to any insured in any one motor vehicle accident as provided in the policy's Endorsement section. Thus, the district court determined Mrs. May was entitled to reformation of the policy for APIP benefits, subject to the $200,000 aggregate per person, per accident, policy limit. By order issued September 26, 2006, it granted Mrs. May's motion for partial summary judgment on the issue of reformation and granted Travelers' motion for summary judgment on the amount of aggregate APIP coverage. Because the parties did not raise the bad faith and breach of contract issues in

their partial summary judgment motions, the district court did not address them, leaving them for future resolution.

Following the district court's order, Travelers paid Mrs. May the sum of $93,132.20, which was the difference between the basic PIP benefits it previously paid her and the $200,000 aggregate APIP cap. Travelers then filed a second summary judgment motion requesting resolution of the remaining breach of contract and bad faith issues. In so doing, it maintained reformation occurred on September 26, 2006 – the date of the initial summary judgment order, and therefore, Mrs. May's bad faith and breach of contract claims must fail because it promptly paid the reformation amount due her after that date. In response, Mrs. May argued no effective date of reformation was needed and, instead, the policy was reformed *ab initio* – as of the date of the issuance of the policy – or, alternatively, on the date of the November 26, 2001 accident.

The district court rejected Mrs. May's contention the policy was reformed *ab initio*, holding contract reformation is an equitable remedy with the formulation of such a remedy resting within its sound discretion. The district court then determined that while Travelers made an offer of APIP benefits, the issue on the sufficiency of that offer was "fairly debatable" or a "close case." Apt. App. at 628. In support, it explained Travelers had a reasonable basis on

which to deny Mrs. May's initial claim to APIP benefits because prior cases, such as *Brennan,* which construed the No Fault Act in regards to APIP benefits, dealt only with reformation in regards to an insurer's *failure to offer APIP benefits* covering injured pedestrians, as required by the Act. It reasoned that *Brennan* put insurance carriers on notice that failure to offer APIP to the same class of individuals entitled to "Basic PIP," such as pedestrians, was deficient, and therefore, a case could be made for retroactive reformation in those types of cases. However, because this case did not involve a failure to offer APIP benefits to pedestrians, but *an actual offer of APIP benefits* in a commercially unreasonable manner in conjunction with *Parfrey,* the district court reasoned that it did not matter if Travelers anticipated the rule in *Brennan* and its progeny concerning the failure to offer APIP coverage to pedestrians and other non-insured classes.

Instead of *Brennan*, the district court explained, the applicable case for resolution of the reformation issue was *Parfrey*. However, because little or no case law applied the *Parfrey* commercially reasonable test to an offer of APIP benefits under § 710 of the Act, and other recent cases made it difficult for an insurer to determine whether its conduct was "commercially reasonable" under the "totality of the circumstances," the district court determined Travelers should not necessarily have anticipated the conduct of its agents, in the manner in which

-12-

they offered APIP benefits to Mr. May, was unreasonable. The district court determined "[t]he evidence presented in the parties' cross-motions did not unequivocally demonstrate[] that the offer of APIP [benefits] to Mr. May was unreasonable," but that it "was a close case that required careful scrutiny and a weighing of the particular facts and circumstances ...." Apt. App. at 627-28. Relying on *Clark v. State Farm Mutual Automobile Insurance Co.,* 319 F.3d 1234 (10th Cir. 2003) (*Clark I*); and *Clark v. State Farm Mutual Automobile Insurance Co.*, 292 F. Supp. 2d 1252, 1267 (D. Colo. 2003) (*Clark II*), the district court held that "[w]here the reformation was not predestined by case law, a retroactive reformation inequitably would hold Travelers liable for coverage it could not foresee during a time it reasonably did not know of such exposure." Apt. App. at 626, 628 (quotation marks and citation omitted).

After determining Travelers was unaware of its legal obligation until resolution of the reformation issue in its prior summary judgment order and that retroactive reformation would pose a substantial hardship on Travelers, the district court held the date of reformation of the insurance policy was September 26, 2006 – the date of its initial summary judgment order. As a result, it determined Mrs. May's remaining claims for bad faith and breach of contract must fail as a matter of law given Travelers promptly paid the additional benefits due to her up to the maximum APIP aggregate benefit amount of $200,000

-13-

following the summary judgment order.

## II. Discussion

On appeal, Mrs. May raises three issues, asking whether the trial court erred in: 1) "establishing an effective date of reformation where Colorado case law calls for the automatic incorporation of statutory benefits absent special circumstances not present here"; 2) "establishing the date of its order as the date of reformation without a hearing and where there was no uncertainty concerning the statutory obligation to make a reasonable offer of coverage"; and 3) "applying an aggregate limit of $200,000 where the original policy did not contain a cap that was applicable or compliant." Apt. Br. at 2.

## A. Reformation Issues

We begin with the first two issues concerning the date of reformation. Mrs. May's first premise in support of her claim for *ab initio* reformation is that reformation back to the date of the insurance policy is a rule of law in Colorado when an insurer violates a known statutory duty to offer coverage. She contends Travelers' statutory obligation to make an adequate offer of APIP benefits was known, clear, and established, so that it should have reasonably anticipated its obligation to make such an offer.

Alternatively, Mrs. May claims the district court should have selected an earlier reformation date based on the facts presented and applicable case law. In either case, she contends the district court erred in selecting the date of its initial summary judgment order as the reformation date. She also contends the district court incorrectly determined it was "fairly debatable" whether Travelers should have known it needed to make a more definitive or adequate offer and therefore improperly relied on *Clark I* and *Brennan* for the proposition that where the issue of reformation is "fairly debatable" the date of reformation should be the date on which the reformation issue was resolved. For the first time on appeal, Mrs. May also claims further fact finding was required on the issue of whether Travelers had a reasonable belief it was not required to pay APIP benefits, and therefore, the district court should have held an evidentiary hearing.

We address these arguments in conjunction with our standard of review and the applicable law. "We review the grant of summary judgment *de novo*, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure."[3] *Reid*, 499 F.3d at 1167 (quotation marks and

---

[3] Mrs. May suggests our standard of review is purely *de novo* when considering a summary judgment decision, while Travelers contends our standard of review is an abuse of discretion in cases, like this one, involving equitable principles on the effective date of reformation. As Travelers suggests, in at least one case involving the date of reformation of an insurance policy, we have reviewed the district court's exercise of its equitable powers in determining the

(continued...)

-15-

citation omitted).  Summary judgment is proper if there is no genuine issue as to

any material fact and the moving party is entitled to judgment as a matter of law.

*See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When parties file cross motions for summary judgment, we may assume no

evidence needs to be considered other than that filed by the parties, but summary

judgment is inappropriate if material facts are in dispute.  *See Atlantic Richfield*

*Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

In diversity cases the laws of the forum state, which in this case is

Colorado, govern our analysis of the underlying claims, while federal law

determines the propriety of the district court's grant of summary judgment.  *See*

*Stickley*, 505 F.3d at 1076*; Reid*, 499 F.3d at 1167; *Hill v. Allstate Ins. Co.*, 479

F.3d 735, 739 (10th Cir. 2007) (*Hill II*).  "This court must determine issues of

state law as we believe the highest state court would decide them."  *Clark I,* 319

F.3d at 1240.  "Although we are not bound by a lower state court decision,

---

[3](...continued)
effective date of reformation for an abuse of discretion, while examining its
underlying factual findings for clear error and its legal determinations *de novo*.
*See Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 705, 709 (10th Cir.
2005) (*Clark III*); *see also Clark I*, 319 F.3d at 1240 (explaining case involved
dismissal of a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure rather than, like here, Rule 56).  We note the district court in this case
employed the same equitable power in selecting the effective reformation date,
and to that extent we find no abuse of discretion and note that, under either
standard, we continue to consider the district court's legal determinations *de
novo*, recognizing no material facts are in dispute in this case.

decisions of a state's intermediate appellate courts are some evidence of how the state supreme court would decide the issue, and we can consider them as such, even if they are not binding precedent under state law." *Id.* (quotation marks and citation omitted). Similarly, we may rely on federal district court cases interpreting the law of the state in question, *see Wade v. Emcasco Insurance Co.*, 483 F.3d 657, 666 (10th Cir. 2007), and this court's unpublished cases which are persuasive or otherwise provide guidance based on their reasoned analyses on like issues. *See United States v. Lyons*, 510 F.3d 1225, 1233 n.2 (10th Cir. Dec. 18, 2007) (relying on 10th Cir. R. App. P. 32.1(A)); *United States v. Samuels*, 493 F.3d 1187, 1194 n.9 (10th Cir.) (same), *cert. denied*, 128 S. Ct. 815 (2007).

We first turn to Mrs. May's claim raised for the first time on appeal in which she argues additional fact finding was necessary, requiring the district court to hold an evidentiary hearing. Mrs. May maintains a hearing was necessary because this case called for an intensive factual review of Travelers' understanding of its obligation to make a reasonable offer, how it assessed what a reasonable offer was and what information it relied on in developing that assessment, and its ability and effort to investigate the adequacy of its own offers.

These arguments are in sharp contrast to her pleadings before the district court, where Mrs. May argued no dispute in fact or law existed with respect to the

issue of the date of reformation. In so doing, she stated that "[t]he legal obligations and facts have been well known to Travelers for quite some time," since passage of § 710 in 1992 and clarifying case law in 1992 and 1996, so that "there is no issue of whether Travelers anticipated the legal obligations it had, or reasonably relied on some alternate interpretation of the law." Apt. App. at 515. At no time during her summary judgment pleadings before the district court did Mrs. May assert that additional fact finding was necessary, nor did she request a hearing, file an affidavit ascertaining additional facts existed relevant to a determination of the issues, or otherwise suggest additional evidence must be obtained to determine the date of reformation. Instead, she repeatedly stated there was no issue as to whether Travelers anticipated its legal obligations, and because no dispute existed as to its known legal obligations, the date of reformation should be *ab initio*, thereby leaving only her bad faith and contract claims viable for jury trial.

Generally, we will not consider for the first time on appeal issues not raised in the district court, *see Nautilus Insurance Co. v. 8160 South Memorial Drive*, *LLC*, 436 F.3d 1197, 1200 (10th Cir. 2006), and certainly not where, as here, the appellant argues before the district court that an issue can be resolved as a matter of law and then conversely claims on appeal that material facts are in dispute, presumably because she is unsatisfied with the result. Moreover, even if we

considered the issues presented concerning the need for an evidentiary hearing, our review of the record shows no dispute of relevant material facts necessary to resolve the legal questions in determining the date of reformation. Instead, as discussed hereafter, the relevant issue is whether an insurer could have anticipated under the applicable law the sufficiency of its offer. Therefore, the district court did not err in resolving the issue on summary judgment as a matter of law and it was unnecessary to hold a hearing to ascertain any further facts.

Turning to the other issues on appeal, we note neither party disputes the district court's actual reformation of the insurance policy, but only the effective date of such reformation, which affects the viability of Mrs. May's breach of contract and bad faith claims. *See Clark I*, 319 F.3d at 1242. However, in considering the district court's determination of the effective date of reformation on appeal, it is axiomatic that one consider the circumstances leading to the policy's reformation together with the relevant case law. This is because when reformation of an insurance policy occurs, as it did here, "the effective date of reformation is an equitable decision to be determined by the trial court *based on the particular circumstances of each case*." *Id.* at 1243 (emphasis added). Thus, even if the district court determines reformation is appropriate, an insurer's denial does not necessarily require reformation back to the date of the policy, as Mrs.

May contends.[4] This is, in part, because Colorado law recognizes insurers have a duty to their policy holders and shareholders not to pay claims that are not within the policy's coverage, *Bailey v. Allstate Insurance Co.*, 844 P.2d 1336, 1340 (Colo. Ct. App. 1992), so that "an insurer may challenge claims which are fairly debatable." *Brennan*, 961 P.2d at 557.

In *Brennan*, where the insurer failed to offer APIP coverage for pedestrians, the Colorado Court of Appeals affirmed the reformation of the insurance policy to the date of the trial court's reformation order, reasoning the insurer should not necessarily have anticipated it would be obligated to pay such benefits. 961 P.2d at 556. In making this determination, the *Brennan* court found it was "fairly debatable" whether the insurer should have anticipated it would be obligated to pay such a benefit until the court ruled on the issue, which was one of first impression. *Id.* at 557. Following *Brennan,* in like cases where no APIP coverage for pedestrians was offered*,* we instructed courts to consider all appropriate factors in determining the date of reformation, including: 1) the degree to which reformation from a particular effective date would upset past

---

[4] *See Clark I*, 319 F.3d at 1244 (holding that "[t]he fact that the insured may be entitled to obtain a reformation of the policy does not impose any obligation upon the insurer to conform to such 'reformed' policy before a court has made such reformation"); *Brennan*, 961 P.2d at 556 (holding the remedy of reformation is an equitable one within the district court's discretion so that even when the insurance policy is reformed, the contractual obligation to pay may be prospective from the date of the judicial reformation).

practices on which the parties may have relied and *whether the insurer anticipated the rule in Brennan on mandatory inclusion of insurance for pedestrians and other uninsured persons*; 2) *how reformation from a particular effective date would further or retard the purpose of the rule in Brennan*; and 3) the degree of injustice or hardship reformation on a particular effective date would cause the parties. *See Clark I*, 319 F.3d at 1243. Obviously, such an analysis does not incorporate the *ab initio* reformation standard promoted by Mrs. May.

In this case, the district court performed the required analysis but concluded factors one and two with respect to *Brennan* were inapplicable in such an analysis because, as the parties agreed, this was not a *Brennan* case involving a *failure to offer APIP coverage to pedestrians*. Instead, the district court determined this case involved an *actual offer of APIP coverage* and an issue on the sufficiency of that offer, which was not an issue in *Brennan*, so that the date of reformation depended on whether Travelers could have anticipated, under the more applicable case, *Parfrey*, whether its offer was "commercially reasonable" under the "totality of the circumstances." Thus, the district court essentially modified the first and second *Clark I* factors by considering not whether the rule and purpose of *Brennan* were anticipated for reformation purposes, which were inapplicable, but whether Travelers could have anticipated its offer was

"commercially reasonable" under *Parfrey*.  While it initially questioned whether *Parfrey* was the correct standard in evaluating the sufficiency of the offer, it applied the *Parfrey* factors, recognizing this court's and the federal district court's prior application of those factors in similar cases.  *See Johnson v. State Farm Mut. Auto. Ins. Co.*, 158 F.App'x 119, 121 (10th Cir. Dec. 9, 2005) (unpublished op.); *Hill v. Allstate Ins. Co.*, 2006 WL 229202, at *4 (D. Colo. Jan. 24, 2006) (unpublished op.) (*Hill I*).

As a preliminary matter, we conclude the district court correctly applied *Parfrey* in assessing whether Travelers could have anticipated the sufficiency of its offer before denying Mrs. May's claim for APIP coverage.  As the district court pointed out in its decision, § 710(2)(a) requires an insurer to offer APIP benefits, but neither that provision nor other provisions of the Act define what constitutes a sufficient offer.  *See Stickley*, 505 F.3d at 1078-79; *see also Breaux v. Am. Family Mut. Ins. Co.*, 387 F. Supp. 2d 1154, 1163-64 (D. Colo. 2005) (*Breaux I*).  Because no statutory guidance exists, this court, the Colorado district court, and the Colorado appellate court have used the *Parfrey* analysis to determine what constitutes a sufficient offer of APIP coverage, as evidenced in at least two decisions issued prior to the district court's summary judgment order[5]

---

[5] *See Johnson v. State Farm,* 158 F.App'x at 121; *Hill I*, 2006 WL 229202, at *4.  *But see Lust v. State Farm Mut. Auto. Ins. Co.*, 412 F. Supp. 2d 1185,

(continued...)

and several other decisions thereafter.[6]

Under *Parfrey,* the criteria is whether the insurer performed "its duty of notification in a manner reasonably calculated to permit the insured to make an informed decision on whether to purchase coverage higher than the basic statutory liability limits." *Stickley*, 505 F.3d at 1078 (relying on *Padhiar*, 479 F.3d at 733). In this case, the district court outlined the *Parfrey* factors, which include:  1) the clarity with which the purpose of coverage was explained to the insured; 2) whether the explanation was made orally or in writing; 3) the specificity of the options made known to the insured; 4) the price at which the different levels of coverage would be purchased; and 5) any other circumstances bearing on the adequacy and clarity of the notification and offer.  *See Stickley,* 505 F.3d at 1078-79 (relying on *Parfrey*, 830 P.2d at 913).  Under *Parfrey*, no one factor appears to be dispositive and they are to be considered together with the totality of the

---

[5](...continued)
1191-92 (D. Colo. 2006) (concluding with limited discussion that *Parfrey*, which dealt with UM/UIM coverage, does not apply to offers of APIP coverage).

[6] *See Stickley*, 505 F.3d at 1078-79; *Reid*, 499 F.3d at 1168-69; *Hill II*, 479 F.3d at 742; *Padhiar v. State Farm Mut. Auto. Ins. Co.*, 479 F.3d 727, 733 (10th Cir. 2007); *Campbell v. Allstate Ins. Co.*, 2007 WL 3046304, at *2 (10th Cir. Oct. 18, 2007) (unpublished op.)*; Johnson v. Hartford Underwriters Ins. Co.*, 238 F.App'x 362 at *2 (10th Cir. June 27, 2007) (unpublished op.); *Jewett v. Am. Standard Ins. Co.*, ___ P.3d ___, ___, 2007 WL 3025286, at *4 (Colo. Ct. App. Oct. 18, 2007); *Munger v. Farmers Ins. Exch.*, ___ P.3d ___, ___, 2007 WL 2003001, at **2, 4 (Colo. Ct. App. July 12, 2007), *cert. denied,* 2008 WL 171060 (Colo. Jan. 22, 2008) (No. 07SC741).

circumstances.  *See Stickley*, 505 F.3d at 1079; *Parfrey*, 830 P.2d at 914 & n.5.

The district court determined reformation of the policy was appropriate after considering these factors together with the fact Travelers did not provide Mr. May with a quote for APIP benefits, a PIP selection form or other written materials describing APIP benefits, or a substantive written or oral description of APIP benefits prior to issuance of that policy, and the agent's incorrect statement that UM/UIM insurance would provide backup coverage for the PIP coverage. Although it reformed the policy, the district court, like the courts in *Brennan* and *Clark I,* determined the issue was "fairly debatable," and therefore, Travelers "should not necessarily have anticipated that it would be obligated to pay [APIP] benefits ...."  *Clark I*, 319 F.3d at 1243; *Brenna*n, 961 P.2d at 556-57.

We agree.  In considering the *Parfrey* factors, together with the totality of the circumstances, it is clear no written document was shown to Mr. May in this case.  Instead, the only "visual" Mr. May was shown on APIP coverages occurred when the agent showed him a list of all PIP and APIP coverages on a computer screen.  However, while a stronger case may have been made on the sufficiency of the offer if it had been in writing, the fact the offer here was not in writing would not have caused Travelers to know that its offer was insufficient, given § 710 does not mandate an APIP offer be in writing.

Next, as the district court explained, little case law existed providing guidance on the sufficiency of an APIP offer under § 10-4-710 at the time Mr. May met with Travelers' agents in May 2001 or when Travelers denied Mrs. May's claim for APIP benefits in December 2004. It was only after those dates that similar cases were decided providing the district court with guidance on what constituted a sufficient APIP offer under *Parfrey*. *See Johnson v. State Farm*, 158 F.App'x 119; *Montez v. Am. Family Mut. Ins. Co.*, 2005 WL 2893870 (Colo. Dist. Ct. June 29, 2005) (unpublished op.). In *Johnson*, we held an offer was sufficient where the insurer made potential policyholders aware of APIP limits in a brochure providing a short explanation of PIP benefits along with a chart showing the varying levels of available PIP coverages. 158 F.App'x at 121-22. In *Montez*, an insurer's offer was held sufficient under *Parfrey* where the agent, like here, met the applicant in a face-to-face meeting and showed her the PIP policy endorsement containing a grid of available PIP and APIP coverages, but did not discuss the specific price of APIP insurance given the insured clearly and unequivocally indicated she was not interest in purchasing APIP insurance.[7] *See*

_____

[7] We recognize Colorado law provides that when an insurer *fails to offer* APIP coverage, one should not speculate on whether the insured would have purchased the APIP coverage if offered. *See Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990-91 (Colo. Ct. App. 1996); *see also Fincher v. Prudential Prop. & Cas. Ins. Co.*, 76 F.App'x 917, 921-22 (10th Cir. Oct. 1, 2003) (unpublished op.). But here, *an offer was made* for APIP benefits, so arguably an ambiguity existed as to whether Travelers agents, after making an offer of APIP coverage, were required to discuss the purpose of that coverage or

(continued...)

-25-

2005 WL 2893870, at **3-5. Later, following the district court's decision in this case, this court decided *Hill II*, in which we determined an insurance agent's act in showing the insured the available APIP coverages, both on her computer screen and on a disclosure form, together with periodic renewal packets offering APIP coverage, provided a sufficient offer, under *Parfrey*, for the insured to make an informed decision. *See* 479 F.3d at 738-39, 742-43; *see also Campbell,* 2007 WL 3046304, at *5 (following *Hill II* based on similar facts involving same insurance company).

In this case, the circumstances presented differ only in varying degrees from these cases, with the exception of the agent's incorrect representation that UM/UIM coverage could supplement Mr. May's PIP coverage. While the district court had the benefit of at least two of these cases in making its decision, Travelers did not.[8] As a result, it is fairly debatable whether Travelers should

---

[7](...continued)
provide more specificity in light of Mr. May's comment he did not want to know about other options because he wanted "to get in as cheap as [he could]" due to financial difficulties. Apt. App. at 108, 491. However, as the district court determined, this argument is countered somewhat by the fact that one agent nevertheless persuaded Mr. May to purchase UM/UIM coverage as backup for basic PIP coverage, even after Mr. May's express disinterest in spending more money.

[8] As previously stated, the issue of whether Travelers' offer was sufficient is not on appeal, so that we determine only whether Travelers should have anticipated that its offer was insufficient, as determined by the district court, for

(continued...)

-26-

have necessarily anticipated whether its offer, in the context and form made, met the sufficiency requirements under *Parfrey*.

In addition, with respect to the *Parfrey* factor requiring price in terms of the different levels of coverage available, *Parfrey* does not state whether the price must be stated precisely or if it is enough, as here, to merely state APIP coverage can be obtained for an additional premium at an aggregate cap. In *Johnson v. State Farm* we held the lack of discussion of the price of APIP insurance did not render the offer commercially unreasonable where the insured received the brochure explaining PIP coverage and chart listing the different levels of PIP coverage and had the opportunity to obtain a quote and ask additional questions in a face-to-face meeting. *See* 158 F.App'x at 121-22; *see also Montez*, 2005 WL 2893870, at *4. Similarly, during his two visits to the insurance agency, Mr. May had an opportunity to obtain a quote or additional information on the list of APIP coverages shown to him on the computer screen or mentioned in his face-to-face discussions with the agents, so it would not have been clear to Travelers that its offer was insufficient. Finally, with respect to the fifth factor, as to the adequacy or clarity of an offer of APIP coverage, as previously stated, little if any case law

---

[8](...continued)
the purpose of determining the date of reformation. As a result, we decline to say how we would determine the issue of the sufficiency of the offer under the same or like circumstances.

specifically addressed what constituted a commercially reasonable offer in conjunction with the same circumstances presented here at the time Travelers denied Mrs. May's claim.

Based on these circumstances, the issue of whether Travelers should have necessarily anticipated the sufficiency of its offer is "fairly debatable." Therefore, we disagree with Mrs. May's contention Travelers' statutory obligation to make an adequate offer of APIP benefits was known, clear, and established, so that it should have reasonably anticipated its obligation to make such an offer and not denied her APIP claim. For these reasons, we also reject Mrs. May's request for *ab initio* reformation based on her argument Colorado requires reformation back to the date of the insurance policy when an insurer violates a *known* statutory duty to offer coverage. Under the circumstances presented, it was arguably unknown whether such a violation occurred until the district court made such a determination in its initial summary judgment decision. Our determination regarding the district court's decision on the effective date of reformation is bolstered by *Breaux v. Am. Fam. Mut. Ins. Co.,* 2007 WL 496697 (D. Colo. Feb. 13, 2007) (slip op.) (*Breaux III*). There, the court determined an insurer could not have anticipated, under the totality of the circumstances, the compliancy of its offer of APIP benefits to one of the plaintiffs, Mr. Whitehead, because the issue was "fairly debatable," or "one of first impression," where no court had

-28-

previously analyzed or defined the parameters of whether or when an offer is reasonably calculated to allow a purchaser an opportunity to make an informed decision. *Id.*, at **3-4, 7. Consequently, in *Breaux III*, the district court held the date of reformation was the date of the district court's order. *Id.,* at *7. The same reasoning applies here.

As to Mrs. May's claim the district court relied on inapposite cases in determining the date of reformation, we disagree. While both *Brennan* and *Clark I* involve a different reformation issue based on the insurer's failure to offer APIP coverage, rather than the sufficiency of such an offer, they nevertheless provide guidance on the separate issue of determining the date of reformation. Like here, in those cases the courts determined the insurer should not have necessarily anticipated it would be obligated to pay APIP benefits and therefore held the date of reformation was the date of the court's decision reforming the policy. *See Clark III*, 433 F.3d at 712-13; *Clark I*, 319 F.3d at 1243; *Clark II*, 292 F. Supp. 2d at 1269; *Brenna*n, 961 P.2d at 556-57. The same analysis applies here.

Conversely, the cases cited by Mrs. May in her claim for an earlier reformation date do not support her contentions. Admittedly, in *Breaux I*, the judge reformed Ms. Breaux's policy back several months before the accident, but it did so only because that was the date the insurer admitted it first knew its offer

-29-

was noncompliant.  *See* 387 F. Supp. 2d at 1159, 1164.  This is in sharp contrast

to Travelers' situation, where the district court determined Travelers should not

have necessarily anticipated its offer was noncompliant until resolution of the

reformation issue in the district court's summary judgment decision.  In both

*Snipes v. American Family Mutual Insurance Co.* and *Thompson*, the Colorado

Court of Appeals generally stated the proposition that when an insurer fails to

offer statutorily mandated APIP coverage, such coverage is deemed incorporated

into the policy.  *See Snipes*, 134 P.3d 556, 558 (Colo. Ct. App. 2006); *Thompson*,

940 P.2d at 990.  However, those cases do not deal with the sufficiency of an

offer or otherwise address the effective date of reformation.  *See Snipes*, 134 P.3d

at 558-59; *Thompson*, 940 P.2d at 990.  Similarly, in *DeHerrera v. Sentry Ins.*

*Co.*, the Colorado Supreme Court held the No Fault Act required the insurer to

provide UM/UIM and basic PIP coverage to a relative insured while riding an off-

road motorcycle, reasoning that such coverage was mandated by statute and must

be read into the policy as a matter of law.  *See* 30 P.3d 167, 171-76 (Colo. 2001)

(*DeHerrera I*).  However, again, that case did not address either the sufficiency of

the offer or the effective date of reformation, which are at issue here.  *Id.*  In

relying on these cases, Mrs. May patently confuses the basic principles of

reformation of an insurance policy with the separate issue of determining the

effective date of such reformation in cases where the sufficiency of an offer of

APIP coverage is fairly debatable.  Moreover, in *DeHerrera III*, after remand and

further appeal, the Colorado Court of Appeals affirmed the trial court's determination that the date of the insurance policy's reformation was the date of the Colorado Supreme Court's decision in *DeHerrera I* because the insurer should not have necessarily anticipated that it would be obligated to pay such benefits until after the court reformed the policy. *See DeHerrera v. Sentry Ins. Co.*, 2007 WL 1705619, slip op. at \*\*7-8 (Colo. Ct. App. June 14, 2007) (unpublished op.) (*DeHerrera III*), *cert. denied,* 2007 WL 4376396 (Colo. Dec. 17, 2007) (No. 07SC656). This lends support to the district court's conclusion in this case.

Based on the circumstances presented and applicable law, it is clear the district court did not err or otherwise abuse its discretion in determining that the date of reformation began on the date of its initial partial summary judgment decision when it reformed the insurance policy. Because this determination affects the viability of Mrs. May's breach of contract and bad faith claims, *see Clark I*, 319 F.3d at 1242-43, the district court similarly did not err in dismissing those claims as a matter of law given Travelers promptly paid the additional benefits due to her up to the maximum APIP aggregate benefit amount of $200,000 following its order.

## B. Aggregate Cap Issue

Finally, Mrs. May contends the district court erred in placing a $200,000

cap on the reformed policy because no applicable cap existed in the policy's

Declarations portion for her PIP coverage, but instead the cap applied only to

APIP coverage, as shown in the policy's Endorsement portion.  Because Mr. May

did not obtain APIP coverage, Mrs. May claims the aggregate limit cannot apply

to her reformed policy.[9]

The insureds made identical arguments in *Breaux I* and *Snipes*, where, like

here, the reformed policy contained an endorsement reflecting a $200,000

aggregate limit on APIP coverage.  *See Breaux I*, 387 F. Supp. 2d at 1159, 1164;

*Snipes*, 134 P.3d at 557-59.  The district court in *Breaux* noted the insured, like

here, had received the endorsement outlining a $200,000 aggregate limit on APIP

coverage in the original policy issued to her.  *Id.* at 1159, 1164-65.  Relying on

our decision in *Essex Insurance Co.*, it explained that general contract principles

and established Colorado law require "'an insurance policy and an endorsement

attached to it ... be considered as a single instrument, and they should be

construed together in the absence of an internal conflict which cannot be

reconciled.'"  *Id.* at 1165 (quoting *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 897

---

[9] In addition, Mrs. May claims that even if a cap exists, the policy was not a "complying policy" by statute because it "attempts to restrict and dilute the required coverages ... by reducing the amount it is actually obligated to pay by the amount of any deductible or coinsurance."  Apt. Br. at 49, 51.  Our review of the record discloses Mrs. May did not raise this claim before the district court.  Therefore, we decline to address it on appeal.

(10th Cir. 1995), and *Martinez v. Hawkeye-Sec. Ins. Co.*, 576 P.2d 1017, 1019 (Colo. 1978)).  It then recited a rudimentary Colorado rule of construction that "[w]hen called [on] to construe an insurance contract, a court must read the contract as a whole and give meaning to all the terms contained within the policy."  *See* 387 F. Supp. 2d at 1165 (relying on *Dome Corp. v. Kennard*, 172 F.3d 1278, 1280 (10th Cir. 1999), and *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 898 (Colo. 2001)).  Applying these principles to the circumstances presented, the *Breaux I* court determined the policy at the time of issuance was unambiguous and clearly established a $200,000 aggregate limit on APIP coverage, and because such a limit was authorized by statute under § 710(2)(b), the reformed policy entitled the insured to only $200,000 in total benefits.  *See* 387 F. Supp. 2d at 1165-66.  Relying on *Breaux I*, the Colorado Court of Appeals reached the same conclusion.  *See Snipes,* 134 P.3d at 559.  We find this instructive as to how the Colorado Supreme Court might decide the issue, even if it is not binding precedent.  Accordingly, we hold the district court properly placed a $200,000 cap on the reformed policy, as provided in the original policy's Endorsement portion.

## III.  Conclusion

For these reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Travelers on the issues of the effective date of reformation

of the insurance policy, breach of contract and bad faith, and the aggregate amount of APIP benefits awarded to Mrs. May.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge