**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 1 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KELLY FINCHER, by her natural father
and next friend James Fincher,

    Plaintiff-Appellant,

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE COMPANY,
a New Jersey Corporation,

    Defendant-Appellee.

No. 02-1280

(D.C. No. 00-RB-2098)
(D. Colorado)

---

## ORDER AND JUDGMENT[*]

---

Before **TACHA**, Chief Judge, **ANDERSON,** and **BRISCOE**, Circuit Judges.

Plaintiff Kelly Fincher, appearing through her father and next friend, James

Fincher, appeals the district court's grant of summary judgment in favor of defendant

Prudential Property and Casualty Insurance Company.  We exercise jurisdiction pursuant

to 28 U.S.C. § 1291, and reverse and remand for further proceedings.

I.

On May 8, 1994, Fincher was riding her bicycle when she was struck and severely

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

injured by a vehicle driven by Anthony Bekeshka. At the time of the accident, Bekeshka was insured under an automobile liability insurance policy issued by Prudential. Because Fincher was considered by Colorado law to be a pedestrian at the time of the accident, she fell within the definition of an "insured" under the no-fault provisions of Bekeshka's policy and was entitled to personal injury protection (PIP) benefits. Prudential paid PIP benefits to Fincher, including medical and rehabilitative expenses, until those expenses reached a total of $100,000, the PIP coverage limits set forth in the Bekeshka policy.

On September 21, 2000, Fincher filed a putative class action complaint in Colorado state district court on behalf of herself and all "persons who were entitled to be offered and paid extended [PIP] benefits by Prudential . . . , as defined under the Colorado [No-Fault] Act, C.R.S. § 10-4-710, but who were never offered and never paid th[o]se benefits by Prudential as required by statute." App. at 17. Fincher's complaint alleged that Prudential was obligated under the No-Fault Act to offer its insureds additional (or "extended") PIP benefits, "including medical benefits unlimited in time or amount, and wage loss benefits unlimited in time or amount." Id. at 22. Fincher's complaint further alleged that Prudential violated this obligation with respect to the Bekeshka policy because "no option existed allowing [the] insured to select either unlimited medical benefits or unlimited wage loss benefits, and the highest aggregate limit available was $150,000." Id. The complaint asserted claims for (1) reformation of contract to include in the Bekeshka policy (as well as in other policies covering class

2

members) the extended benefits required under the No-Fault Act, (2) breach of contract, (3) breach of covenant of good faith and fair dealing, (4) willful and wanton breach of contract; and (5) deceptive trade practices in violation of the Colorado Consumer Protection Act.

On or about October 23, 2000, Prudential removed the case to federal court based on diversity jurisdiction. Prudential moved for summary judgment, arguing (1) it "did, in fact, offer extended PIP benefits to the Bekeshkas, but they were rejected in favor of the basic benefit package," (2) in any event, "pedestrians were not entitled to extended PIP benefits until 1998 [when the Colorado Court of Appeals issued its decision in Brennan v. Farmers Alliance Mutual Insurance Company, 961 P.2d 550 (Colo. App. 1998)], 6 years after the Bekeshka policy was issued, and 4 years after the Plaintiff's accident," and (3) Fincher's damages, if any, were limited by the statutory $200,000 minimum cap on extended PIP benefits. Suppl. App. at 2.

On June 10, 2002, the district court granted summary judgment in favor of Prudential. The court noted that, in Brennan, "the Colorado Court of Appeals held that pedestrians [we]re entitled to coverage from APIP [extended PIP] benefits under the No-Fault Act." App. at 4. According to the district court, it "previously had been unclear as to whether pedestrians were entitled to such benefits." Id. at 4-5. The court concluded that "[t]he Brennan rule should not be applied retroactively to Fincher's 1994 accident." Id. at 6. In other words, the court concluded that, "at the time of Fincher's accident,

3

Colorado law did not require that pedestrians be covered by [extended PIP] benefits," and Fincher could not pursue "claims based on a violation of the [extended PIP] statute when she [wa]s not entitled to benefits under that statute." Id. at 6-7.

## II.

We review the district court's grant of summary judgment de novo, applying the same standards as the district court under Federal Rule of Civil Procedure 56(c). Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999). A grant of summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In applying this standard, "the substantive law will identify which facts are material." Id. at 248. Because this is a diversity case, we apply the substantive law of Colorado, the forum state. See Sapone v. Grand Targhee, Inc., 308 F.3d 1096, 1100 (10th Cir. 2002). If "no [Colorado] cases exist on a point, we turn to other state court decisions, federal decisions, and the general weight and trend of authority." Id. (internal quotations omitted).

## III.

*Overview of No-Fault Act and Brennan*

Before directly addressing the issues raised by Fincher on appeal, we find it helpful to review the relevant provisions of Colorado's No-Fault Act and the decision in Brennan interpreting those provisions. Generally speaking, "[t]he No-Fault Act requires

4

that a complying policy include mandatory PIP benefits." Brennan, 961 P.2d at 552.

Section 10-4-706(1) of the Act requires an insurer to provide:

> (b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical . . . and nonmedical remedial care and treatment . . . performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle . . . .
> (c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle.

Colo. Rev. Stat. § 10-4-706(1)(b)(I) and (1)(c)(I) (2001).

Section 10-4-707 of the No-Fault Act outlines persons to whom the minimum PIP coverages apply. More specifically, § 10-4-707 provides that the minimum PIP coverages set forth in § 10-4-706 apply "to four groups of people: 1) the named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle." Brennan, 961 P.2d at 553.

Section 10-4-710 of the No-Fault Act requires insurers to offer supplemental PIP coverage to policyholders:

> Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706, at the option of the named insured:
> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation; or
> (II) Compensation of all expenses of the type described in section

5

10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Rev. Stat. § 10-4-710(2)(a) (2001).

Prior to Brennan, at least some insurers in Colorado had concluded that § 10-4-710(2)(a) did not require them to offer extended PIP coverage for pedestrians. The insurers' conclusion rested primarily on the fact that (1) § 10-4-710 did not specifically identify to whom supplemental coverages were applicable, and (2) the list of covered persons in § 10-4-707 referred only to the minimum PIP coverages in § 10-4-706. See Brennan, 961 P.2d at 553. The insurers also concluded that "the legislative purpose of § 10-4-710 [wa]s to provide policyholders with a wider range of choices" and that "most insureds d[id] not want to pay additional premiums for coverage for non-family members." Id. at 554.

In Brennan, the parents of an injured pedestrian filed suit against the insurer of the driver who struck their child, asserting the insurer was obligated under the No-Fault Act to provide extended PIP benefits to cover the child's injuries. The trial court reformed the policy at issue to include extended PIP coverage for pedestrians (which thereby afforded plaintiffs the right to extended PIP benefits under the policy). The Colorado Court of Appeals affirmed the trial court's decision to reform the policy. In doing so, the court rejected the insurer's position outlined above and concluded the extended PIP

6

coverage set forth in § 10-4-710(2)(a) was applicable to pedestrians. See 961 P.2d at 553.

In reaching this conclusion, the court noted that the No-Fault Act, whose purpose was "to

avoid inadequate compensation to all victims of automobile accidents," was "to be

liberally construed to further its remedial and beneficent purposes." Id. The court

reviewed the language of § 10-4-710 and concluded that it clearly supported extended PIP

coverage for pedestrians:

> Although [the insurer] correctly notes that § 10-4-710(2)(a) does not list nor refer to persons who are eligible for coverage, when this section is read in context, it is apparent that the extended coverages offered there must apply to the categories of persons listed in § 10-4-707(1). Specifically, in § 10-4-710, extended coverage is to be made available "in addition to the coverage described in § 10-4-706." The "types" of extended coverage to be provided are the "types" described in § 10-4-706(1)(b). And, the coverages provided in § 10-4-706(1)(b) apply without distinction to all categories of persons listed in § 10-4-707(1). Thus, by the plain terms of these provisions, § 10-4-710 describes an option to purchase coverage, but at higher limits, for the same persons and under the same conditions applicable to mandatory basic PIP coverage.

Id. at 553-54. The court also emphasized that the No-Fault Act imposed a specific duty

on insurers:

> Unlike § 10-4-706, § 10-4-710 provides no mandate to the motor vehicle owner or operator; the purchase of the coverages by the insured, and therefore, the extent of the coverages, are completely optional. Conversely, the directive of § 10-4-710 is to the insurer, not to the insured: all that is required is that the insurer offer these extended benefits.
>
> Thus, although an insurer must offer extended coverages listed in § 10-4-710 which apply to all categories of persons specified in § 10-4-707, nothing in the No-Fault Act prohibits the named insured from limiting its purchase of additional coverage by scope, application, or amount.

Id. at 554.

7

*District court's construction of No-Fault Act and* <u>Brennan</u>

The district court here concluded that, at the time of Fincher's accident, Colorado law did not obligate insurers to offer extended PIP benefits for pedestrians. The district court based its conclusion on its belief that <u>Brennan</u>, although clarifying that insurers were obligated under the No-Fault Act to offer extended PIP benefits for pedestrians, was to be applied prospectively only.

Fincher contends, and we agree, that the district court's reasoning is undercut by our recent decision in <u>Clark v. State Farm Mutual Automobile Insurance Company</u>, 319 F.3d 1234 (10th Cir. 2003), which was filed after the district court's ruling. In <u>Clark</u>, we dealt with a substantially similar appeal filed by an injured pedestrian against a PIP insurer. In sum, <u>Clark</u> makes clear that, contrary to the conclusion reached by the district court, <u>Brennan</u> did not establish a new principle of law, and instead merely construed § 10-4-710 of the No-Fault Act to encompass pedestrians. Thus, we conclude that Prudential was generally obligated at the time of Fincher's accident to offer extended PIP benefits for pedestrians in the amounts set forth in the No-Fault Act.

*Rejection of Prudential's extended coverage offer*

In a fall-back argument, Prudential contends that, even if it was obligated under the No-Fault Act to offer extended PIP coverage for pedestrians, the uncontroverted facts indicate that the Bekeshkas would have rejected it. In support, Prudential notes that it offered the Bekeshkas a number of extended coverage options (none of which actually

8

satisfied the requirements of the No-Fault Act) and the Bekeshkas rejected all of those options "because they were retired and on a fixed income, and did not want to pay a higher premium." Aplee. Br. at 37 n.9.

We conclude that Prudential's arguments are contrary to the decision in Thompson v. Budget Rent-A-Car Systems, Inc., 940 P.2d 987 (Colo. App. 1996). In Thompson, an individual was seriously injured while a passenger in a car rented from defendant Budget. Budget, a self-insurer under Colorado law, paid PIP benefits to the injured person in amounts equal to the minimum PIP coverages set forth in the No-Fault Act. The injured person's conservator and guardian filed suit against Budget seeking additional PIP benefits. The trial court held that Budget was obligated under the No-Fault Act to pay medical and income loss PIP benefits to the injured party without dollar or time limitation. Budget appealed, asserting in part that the driver (and renter of the vehicle) would have refused extended PIP coverage if it was offered. The Colorado Court of Appeals rejected Budget's argument and affirmed the trial court's reformation of the rental agreement/insurance contract. The court held that "[w]hen an insurer fails to offer the insured optional coverage that it is statutorily required to offer, additional coverage in conformity with the required offer is incorporated into the agreement by operation of law." Id. at 990. The court also refused to place any reliance on "the driver's after-the-fact statement that he would have refused the additional coverage if it had been offered." Id. In particular, the court emphasized that an "insurer has no right to a jury

9

trial to determine whether the insured would have purchased the coverage" because such a "determination [would] be too speculative" and "would allow insurers to circumvent the intent of the legislature." Id. (quoting Kuchenmeister v. Illinois Farmers Ins. Co., 310 N.W.2d 86, 88 (Minn. 1981)).

Although Prudential asserts that Thompson is distinguishable for three reasons, none of those reasons have merit. First, Prudential asserts that Thompson "does not apply here because it did not establish pedestrians' rights to extended PIP benefits." Aplee. Br. at 38. While it is true that Thompson involved an injured passenger rather than an injured pedestrian, that distinction should not result in our treating the two differently. Thompson's holding regarding the reformation of an insurance contract is, in our view, applicable to any situation where an insurer has failed to comply with the No-Fault Act and offer an insured the extended PIP coverage set forth therein. Second, Prudential asserts that "[n]othing in the Thompson opinion changes the subsequent Brennan decision," which it asserts does not apply here. Id. For the reasons outlined above, however, it is clear that Brennan does apply and that Prudential was statutorily obligated to offer to the Bekeshkas extended PIP benefits for pedestrians. Finally, Prudential asserts this case is factually distinguishable from Thompson because, "[u]nlike Thompson," which involved an "after-the-fact affidavit [from the insured] suggesting that he would not have purchased extended benefits even if they had been offered," "the Bekeshkas were offered and declined extended PIP coverage." Id. Thus, Prudential

10

asserts, "[t]here is nothing speculative whatsoever here about the facts surrounding the Bekeshkas' purchase decision." Id. However, Prudential ignores the fact that its offer to the Bekeshkas of extended PIP benefits did not comply with the No-Fault Act (since the amounts set forth in the offer were insufficient). Thus, like the situation in Thompson, it would be speculation to conclude the Bekeshkas would have rejected an offer that actually complied with the No-Fault Act. In any event, Thompson does not allow an insurer to avoid reformation by asserting factual defenses such as the one now asserted by Prudential.

*Remand for further proceedings*

Having rejected the two arguments forwarded by Prudential on appeal in support of the district court's summary judgment ruling, it is apparent that the judgment of the district court must be reversed and the case remanded to the district court for further proceedings. Although Fincher, like the plaintiff in Clark, "is entitled to reformation under Brennan, the district court must also determine [on remand], through the exercise of its equitable powers, the effective date of reformation."[1] Clark, 319 F.3d at 1242-43. In doing so, the district court

> should consider all appropriate factors, including the following: (1) the
> degree to which reformation from a particular effective date would upset

---

[1] In her motion for summary disposition, Fincher asks the panel to conclude "that extended benefits are incorporated into Prudential's insurance policy by operation of law ab initio to the full extent mandated in the No-Fault Act." Motion for Summary Disp. at 4. Such a ruling, however, would be inconsistent with our decision in Clark.

11

past practices on which the parties may have relied and whether [Prudential] anticipated the rule in <u>Brennan</u>; (2) how reformation from a particular effective date would further or retard the purpose of the rule in <u>Brennan</u>; and (3) the degree of injustice or hardship reformation from a particular effective date would cause the parties.

<u>Id.</u> at 1243. The district court's decision regarding the effective date of reformation will, in turn, have an impact on the viability of Fincher's remaining claims against Prudential.

As was the case in <u>Clark</u>, Fincher's contract, tort and statutory claims

will remain viable only if the district court in the exercise of its equitable power determines that reformation should occur as of a date preceding its order of reformation. Only under those circumstances would there be an extant contract, tort, or statutory duty to be breached. Conversely, if reformation is ordered to correspond to the date of entry of the order of reformation, there would be no pre-existing duty to pay extended PIP benefits.

<u>Id.</u> at 1244. Lastly, the district court should consider Fincher's motion for class certification (which was denied as moot in light of its summary judgment ruling).

The decision is REVERSED and the case is REMANDED to the district court for further proceedings.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

12