**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KELLY FINCHER, by her natural father
and next friend JAMES FINCHER,

      Plaintiff - Appellant - Cross-
      Appellee,

v.

PRUDENTIAL PROPERTY AND
CASUALTY INSURANCE COMPANY,
a New Jersey Corporation,

      Defendant - Appellee - Cross-
      Appellant.

Nos. 08-1109 & 08-1159
(D. Colo.)
(D.C. No. 1:00-CV-02098-REB-MJW )

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

On May 8, 1994, Appellant Kelly Fincher, a pedestrian, was struck and severely

injured by a vehicle.  The driver was insured under an automobile liability insurance

policy issued by Prudential Property and Casualty Insurance Company ("Prudential") in

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A).  Citation to unpublished decisions is not prohibited.  Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value.  10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished).  *Id*.

April 1992. In a prior appeal, we held Fincher was entitled to reformation of the policy because Prudential's offer of additional or enhanced personal injury protection (APIP or "enhanced PIP") benefits to its insured did not comply with the Colorado Auto Accident Reparations Act (CAARA), Colo. Rev. Stat. §§ 10-4-701 to -726 (2002).[1] *Fincher v. Prudential Prop. & Cas. Ins. Co.*, 76 Fed. Appx. 917, 922 (10th Cir. 2003) (*Fincher I*). Specifically, Prudential's offer of APIP benefits to its insured violated CAARA because it capped those benefits at $150,000 whereas CAARA did not permit a cap lower than $200,000.[2] On remand, the district court held the policy should be reformed to provide APIP benefits as of the date of Fincher's accident but determined those benefits were subject to a $200,000 cap. It also granted Prudential's motion for summary judgment on Fincher's claims of breach of the covenant of good faith and fair dealing and willful and wanton breach of contract and denied Fincher's motions for attorneys' fees and class certification. Both parties appeal from the district court's judgment.[3] Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[1] Prior to its repeal in 2003, CAARA was Colorado's no-fault insurance act, requiring motor vehicle owners to maintain minimum insurance coverage on their vehicles, including no-fault personal injury protection ("PIP") coverage. Colo. Rev. Stat. § 10-4-706(1). CAARA also required insurers to offer APIP coverage in exchange for higher premiums. Colo. Rev. Stat. § 10-4-710(2)(a). Except where otherwise indicated, all references to the Colorado Revised Statutes are to the version in effect in 2002.

[2] Prior to January 1, 1990, CAARA provided that any cap on APIP benefits could not be lower than $100,000. *See* Colo. Rev. Stat. § 10-4-710 (1989). Effective January 1, 1990, the lowest permissible cap on APIP benefits was increased from $100,000 to $200,000. *See* Colo. Rev. Stat. § 10-4-710 (1990).

[3] Fincher's appeal was assigned Case No. 08-1109. Prudential's cross-appeal was assigned Case No. 08-1159.

## I.   BACKGROUND[4]

A.   Fincher I

On September 21, 2000, Fincher filed an amended putative class action complaint in Colorado state court alleging, *inter alia*, Prudential's offer of APIP benefits violated CAARA because it capped those benefits at $150,000 whereas, at the time the policy was issued, CAARA did not permit a cap lower than $200,000.  Fincher sought reformation of the policy to provide unlimited APIP benefits and also asserted claims for, *inter alia*, breach of contract, breach of the covenant of good faith and fair dealing, and willful and wanton breach of contract.  Prudential removed the case to federal court and filed a motion for summary judgment.  The district court granted the motion, concluding Colorado law did not require insurers to offer APIP coverage to pedestrians at the time of the accident.  In doing so, it determined *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 554 (Colo. Ct. App. 1998), which held APIP coverage must include pedestrians, was to be applied prospectively only.

We reversed, holding Fincher was entitled to reformation under *Brennan* based on our decision in *Clark v. State Farm Mut. Auto. Ins. Co*., 319 F.3d 1234 (10th Cir. 2003) (*Clark I*), which held *Brennan* applied retroactively.  *See Fincher I,* 76 Fed. Appx. at 921-22.  We rejected Prudential's argument that reformation was not warranted because the record demonstrated the insured would not have purchased extra coverage had it been

---

[4] The factual and procedural history of this case are set forth in our previous decision, *Fincher I*, 76 Fed. Appx. at 918-19.  We recite only those facts essential to our decision here.

offered. *Id.* Relying on *Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987 (Colo. Ct. App. 1996), we held the subjective intent of the insured was irrelevant to the question of whether reformation was warranted. *Id.* We remanded the case to the district court to determine the effective date of reformation and noted the court's decision regarding the date of reformation would determine the viability of Fincher's remaining claims. *Id.* at 922-23. We also instructed the court to consider Fincher's motion for class certification.[5] *Id.* at 923.

B.    Remand

Following a bench trial, the district court concluded the policy should be reformed to provide APIP benefits as of the date of Fincher's accident but capped those benefits at $200,000. The court entered an order to this effect on February 28, 2006. Even before the court entered this order, Prudential paid Fincher $92,500 in APIP benefits, representing the difference between the $200,000 cap and the amount it had previously paid. It subsequently paid Fincher $202,000 in statutory interest.[6]

---

[5] We explained:

> Although Fincher . . . is entitled to reformation under *Brennan*, the district court must also determine on remand, through the exercise of its equitable powers, the effective date of reformation . . . . The district court's decision regarding the effective date of reformation will . . . have an impact on the viability of Fincher's remaining claims against Prudential . . . . Lastly, the district court should consider Fincher's motion for class certification . . . .

*Fincher I*, 76 Fed. Appx. at 922-23 (quotations omitted).

[6] Prudential first tendered a check to Fincher in the amount of $92,500 in March 2005. It claims its delay following our decision in *Fincher I* was reasonable because, *inter alia*, payment "was not legally due until Fincher had obtained a final judgment and

On March 22, 2007, the court denied Fincher's motion for class certification concluding the claims of the proposed class members did not meet the typicality requirement; final injunctive relief would not be appropriate for the class as a whole; and individual issues would predominate over common questions of law or fact. On October 9, 2007, the court granted Prudential's motion for summary judgment on Fincher's bad faith and willful and wanton conduct claims.[7] On March 31, 2008, the court denied Fincher's motion for attorneys' fees concluding the attorney fee provision contained in CAARA, *see* Colo. Rev. Stat. § 10-4-708, does not apply to a claim for APIP benefits under Colo. Rev. Stat. § 10-4-710. Final judgment was entered on March 31, 2008.

Fincher filed her notice of appeal on April 1, 2008. She contends the district court erred by: capping the APIP coverage at $200,000; dismissing her claims for breach of the covenant of good faith and fair dealing and willful and wanton breach of contract; denying her motion for attorneys' fees; and denying class certification. Prudential filed its notice of cross-appeal on April 29, 2008, arguing the court erred in reforming the policy to provide for APIP benefits as of the date of the accident.

all appeals had been exhausted." (Appellee's/Cross-Appellant's Principal & Response Br. at 38.) Fincher's counsel rejected that check because it was made payable to Fincher and "CHAMPUS FISCAL INTERMEDIARY." (Appellants' App. Vol. XI at 3567.) Prudential made the check jointly payable to Champus, another insurance company, because it had paid some of Fincher's medical expenses. Prudential tendered a new check payable only to Fincher (and her counsel) on April 12, 2006. It does not explain the one-year delay. On May 31, 2006, Prudential tendered a check to Fincher (and her counsel) in the amount of $202,000. This payment was accepted.

[7] The court *sua sponte* granted summary judgment in favor of Fincher on her breach of contract claim. That decision is not at issue.

## II. DISCUSSION

A.     <u>Motion to Dismiss Cross-Appeal</u>

Fincher filed a motion to dismiss Prudential's cross-appeal claiming we lack jurisdiction over the appeal because it was not timely filed. *See* 10th Cir. R. 27.2(A)(1)(a). Rule 4(a) of the Federal Rules of Appellate Procedure sets forth the requirements for filing a notice of appeal in a civil case. Pursuant to Rule 4(a)(1)(A), a notice of appeal must generally be filed "within 30 days after the judgment or order appealed from is entered." A notice of cross-appeal must be filed within this same time period or within fourteen days of the filing of the first notice of appeal, "whichever period ends later." Fed. R. App. P. 4(a)(3).

The court resolved the issue of the effective date of reformation in an order dated February 28, 2006. It resolved the viability of Fincher's remaining claims in an order dated October 9, 2007, but it did not enter final judgment until March 31, 2008, after denying Fincher's motion for attorneys' fees. Prudential filed its notice of cross-appeal within thirty days of the entry of final judgment, on April 29, 2008. This would appear to satisfy Rule 4(a)(3). But Fincher contends Prudential's time to appeal began to run on March 7, 2008, which is 150 days after the court entered the October 9, 2007 order on the docket. *See* Fed. R. Civ. P. 58(c)(2) (stating when a separate document is required, judgment is entered "when the judgment is entered in the civil docket . . . and the earlier of these events occurs: (A) it is set out in a separate document; or (B) 150 days have run from the entry in the civil docket"); Fed. R. App. P. 4(a)(7)(A) (same). Fincher is mistaken.

While a motion for attorneys' fees does not ordinarily toll the time for filing a notice of appeal (or cross-appeal), *see* Fed. R. Civ. P. 58(e), a court may defer the entry of judgment and give a motion for attorneys' fees the same tolling effect under Rule 4(a)(4) of the Federal Rules of Appellate Procedure as a timely motion under Rule 59 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 58(e); Fed. R. App. P. 4(a)(4)(A)(iii). This has the benefit of promoting judicial efficiency by allowing an appeal relating to a fee award to be heard at the same time as an appeal relating to the merits. *See Burnley v. City of San Antonio*, 470 F.3d 189, 198 (5th Cir. 2006).

This is exactly what the court did here, which had the effect of tolling the time for either party to appeal. In its October 9, 2007 order, the court stated: "[F]ollowing the resolution of the plaintiff's claim for an award of attorney fees . . . the court shall direct the entry of final judgment in this case." (Appellants' App. Vol. XII at 4023.) Consistent with this pronouncement, the court entered final judgment on March 31, 2008. The court did not specifically refer to Rule 58 and Rule 4, but it did not have to. We have previously held these Rules "are not applicable where . . . the absence of a separate judgment . . . was not mere oversight." *Utah v. Norton*, 396 F.3d 1281, 1287 (10th Cir. 2005). The court clearly intended to delay entry of final judgment in this case and thus, Prudential's notice of cross-appeal was timely. We therefore have jurisdiction to consider the cross-appeal.

B.      Choice of Law

Since this case is grounded on diversity jurisdiction, we apply federal procedural law and the substantive law of the forum state—here, Colorado. *See Blanke v.*

*Alexander*, 152 F.3d 1224, 1228, 1230 (10th Cir. 1998). "[W]e apply the most recent statement of state law by the Colorado Supreme Court." *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005) (*Clark III*). In cases where the Colorado Supreme Court has not ruled, we "must determine issues of state law as we believe the highest state court would decide them." *Clark I*, 319 F.3d at 1240. "Although we are not bound by a lower state court decision, decisions of a state's intermediate appellate courts are some evidence of how the state supreme court would decide the issue, and we can consider them as such, even if they are not binding precedent under state law." *Id.* (quotations omitted). "[W]hen a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on . . . subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).

C.    Reformation Date

In *Fincher I*, we instructed the district court to determine the reformation date by applying the three-factor test from *Clark I*. *See Fincher I*, 76 Fed. Appx. at 922-23. On remand, the court considered four possible reformation dates, the earliest of which was the date of Fincher's accident (May 8, 1994). In describing the effect of choosing the date of the accident as the reformation date, it explained:

> In essence, reformation as of [the date of Fincher's accident] would indicate that Prudential should have been aware of its obligation to provide offers and policies with an APIP cap no lower than 200,000 dollars, that there was no reasonable basis for Prudential not to have done so, and that other relevant considerations do not weigh in favor of a later reformation date.

(Appellants' App. Vol. VII at 2252.) The court applied the three-factor test from *Clark I*

and determined the policy should be reformed as of the date of Fincher's accident.

Prudential contends the court should have utilized the test outlined in *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992) (*Parfrey*),[8] rather than the *Clark I* test. Alternatively, it argues even if the court did not err in using the *Clark I* test, it applied the test incorrectly. It contends the court should have selected the date of its order as the effective date of reformation.

The selection of a reformation date "is an equitable decision to be determined by the trial court based on the particular circumstances of each case." *Clark I*, 319 F.3d at 1243. Our review is for an abuse of discretion. *See Clark III*, 433 F.3d at 709. "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling. We examine the district court's underlying factual findings for clear error, and its legal determinations de novo." *Id.* (citation and quotations omitted). We "will not disturb the district court's selection of an effective reformation date unless [we have] a definite and firm conviction that the district court has made a clear error in judgment or

---

[8] In *Parfrey*, the Colorado Supreme Court adopted a multi-factorial "totality of the circumstances" test for determining whether an insurer has fulfilled its statutory duty of notification and offer. 830 P.2d at 914. It explained:

[A] court may appropriately consider such factors as the clarity with which the purpose of UM/UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of UM/UIM coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

*Id.* at 913.

exceeded the bounds of permissible choice in the circumstances." *Id.* at 713 (quotations omitted). This case does not qualify.

The court did not commit a legal error in utilizing the *Clark I* test. In *Clark I*, we ordered reformation of an insurance policy because the insurer failed to offer APIP benefits which covered pedestrians, in violation of CAARA. 319 F.3d at 1241. In *Parfrey*, the issue was not whether the insurance company offered CAARA-compliant coverage; instead, the issue was whether the insurer satisfied its one-time duty to notify the insured of the nature and purpose of certain coverage (coverage for uninsured and underinsured motorists). *See* 830 P.2d at 913. Thus, the *Parfrey* test is used to determine the sufficiency of an offer of CAARA-compliant coverage. *See, e.g., May v. Travelers Prop. Cas. Co. of Am.*, 263 Fed. Appx. 673, 683 (10th Cir. 2008) (unpublished) (applying *Parfrey* test in determining whether the insurer made a sufficient offer of CAARA-compliant APIP benefits).[9] By contrast, the *Clark I* test is used when the benefits offered do not comply with CAARA. In *Fincher I*, we held Fincher was entitled to reformation because the APIP benefits offered by Prudential did not comply with CAARA. *Clark I* therefore presents the proper test.

Under *Clark I*, a district court must consider three factors in determining the effective date of reformation:

> (1) the degree to which reformation from a particular effective date would upset past practices on which the parties may have relied and whether [the

[9] Unpublished decisions are not binding precedent. We mention *May* as we would any other non-precedential authority, persuasive because of its reasoned analysis. *See* 10th R. 32.1(A).

inserter] anticipated the rule in *Brennan*;

(2) how reformation from a particular effective date would further or retard the purpose of the rule in *Brennan*; and

(3) the degree of injustice or hardship reformation from a particular effective date would cause the parties.

319 F.3d at 1243. "These factors do not necessarily have equal weight but are to be evaluated on the basis of the strength of the equitable and policy considerations underlying each." *Id.* at 1243-44 (quotations omitted).

Prudential argues the district court misapplied each of these factors. We disagree. In applying the *Clark I* test, the court did not make a clear error in judgment or exceed the bounds of permissible choice. On the contrary, its decision was thorough and well-reasoned.

The court considered the first factor (reliance and anticipation) to weigh in favor of an early reformation date. The court found Prudential knew of the $200,000 cap on APIP benefits when it became effective (January 1, 1990) and did not act diligently in pursuing approval of its forms reflecting the $200,000 cap.[10] The court found reforming

---

[10] Prudential's policy forms complied with CAARA and were approved by the Colorado Division of Insurance (DOI) until January 1, 1990, when the lowest permissible cap on APIP benefits was increased to $200,000. *See supra* n.2. Prudential began revising its policy forms to reflect the $200,000 cap; however, the DOI disapproved of Prudential's revised forms on multiple occasions due to problems unrelated to the policy cap. Prudential claims it was "caught between a rock and a hard place" because it was "legally prohibited from using" its new forms prior to receiving DOI approval. (Appellee's/Cross-Appellant's Principal & Response Br. at 4.) This is a convenient but unappealing argument. The district court was not persuaded Prudential pursued "with adequate vigilance" the task of making its forms compliant. (Appellants' App. Vol. VII at 2255). Neither are we.

the policy as of the date of Fincher's accident "does not upset the parties' past practices or their reasonable reliance on applicable legal rules that were clear and predictable." (Appellants' App. Vol. VII at 2257.)

Prudential contends the district court should have considered whether it could have predicted the rule in *Brennan* (APIP coverage must include pedestrians), not whether it could have predicted that APIP benefits would be subject to a $200,000 cap. In the district court, however, Prudential argued the degree to which it could have anticipated *Brennan* "is not directly applicable to this case because Prudential (as opposed to some other insurers) was already providing extended PIP coverage to pedestrians prior to *Brennan*." (*Id*. at 2123.) The court adopted this very argument—it found Prudential could not have anticipated the rule in *Brennan* but stated that fact "carries little weight" because *Brennan* "is not directly relevant to the key flaw in the Prudential policy," which was Prudential's offer of improperly capped APIP coverage. (*Id*. at 2253.) Prudential cannot now complain of an alleged error it induced or invited in the district court. *See Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996).

According to Prudential, the court also erred by not considering Prudential's belief it was complying with CAARA by instructing its agents to orally offer APIP benefits with the $200,000 cap. The court considered this argument but found it did not weigh in favor of a later reformation date because Prudential did not prove it made a compliant

- 12 -

offer of APIP benefits to the insured here.[11]

As to the second factor (furthering the purpose of *Brennan*), the district court found it also weighed in favor of an early reformation date because such a date "tends to ensure that Fincher receives all of the coverage to which she is entitled, and that she receives compensation for the fact that she did not receive that coverage in a timely fashion." (Appellants' App. Vol. VII at 2260.) The court reiterated that, at the time the policy was issued and at the time of the accident, CAARA required insurers to offer APIP benefits capped at no less than $200,000. This requirement "was established clearly at all times relevant to this case" and an early reformation date "will have the effect of deterring violation of the clear requirements of Colorado law." (*Id.*)

Prudential contends an early reformation date does not further the purpose of *Brennan* because Prudential reasonably believed it was complying with CAARA by instructing its agents to orally offer APIP benefits up to $200,000 and by paying APIP benefits up to $200,000 when an insured selected APIP benefits capped at $150,000. The district court considered, and rejected, this argument. The court looked at the purpose of *Brennan* more broadly—as not just ensuring pedestrians receive APIP coverage, but ensuring all individuals receive the statutorily required coverage. Reformation is an

---

[11] Prudential claims it routinely paid APIP benefits up to $200,000 (in spite of its policies' nominal $150,000 limit) when an insured selected APIP benefits. Its claim is not disputed. From that undisputed assertion it argues it was, in fact, complying with CAARA. While this may (and probably did) impact the equitable considerations in the reformation calculus in this case, it does not address the problem with Prudential's deficient offer of benefits and is not relevant where, as here, the insured did not select APIP benefits.

equitable remedy and the court did not clearly err in its analysis

As to the third factor (injustice or hardship), the district court recognized "both parties face some hardships depending on the reformation date" but concluded "the balance of these hardships weighs in favor of an earlier reformation date." (*Id.* at 2262.) Prudential says Fincher faced no hardship because all of her PIP-compensable bills were timely paid by Prudential and other insurers and the delay in payment "enabled Fincher to pocket duplicative reimbursement of $92,500 in medical expenses and $202,000 in interest at 18%." (Appellee/Cross-Appellant's Principal & Response Br. at 22.) Fincher may not ultimately have suffered any financial hardship, but she did not receive full payment from Prudential until twelve years after her accident and after six years of litigation. That delay surely counts as a hardship.

D.  Cap on APIP Benefits

After setting the reformation date, the court held the APIP benefits in the reformed policy should be capped at $200,000. It arrived at this determination by applying a modified version of the three-factor test from *Clark I.*[12] The court explained its reasoning as follows:

[12] The court considered:

1) the degree to which reformation with or without a cap on APIP benefits would upset past practices on which the parties have relied, and whether Prudential anticipated the applicability of the 200,000 dollar cap; 2) how reformation with or without a cap would further or retard the purposes of the CAARA; and 3) the degree of injustice or hardship reformation with or without a cap would cause the parties.

(Appellants' App. Vol. VII at 2265-66.)

On balance, I find that the relevant equitable factors weigh in favor of including a 200,000 dollar cap on APIP benefits . . . . Including this cap protects the parties' reasonable reliance and past practices, serves the purposes of the CAARA, and balances the relevant injustices and hardships between the parties. Reforming the policy with no cap would substantially upset Prudential's reliance on its ability to limit and control the liabilities to which it was exposed, and would provide an inequitable windfall to Fincher. Further, including a cap on APIP coverage provides the coverage mandated by the CAARA, and respects Prudential's pellucid intent to include such a cap in its policy.

(Appellants' App. Vol. VII at 2270.) Fincher argues the decision whether to impose a cap should be guided by the language of the original policy which did not contain a $200,000 cap.

Reformation of a contract is an equitable remedy and "[w]e review the district court's exercise of its equitable powers for abuse of discretion." *Clark III*, 433 F.3d at 709. "A district court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." *Id.* (quotations omitted).

Because reformation is an equitable remedy, we are not troubled by the court's use of the modified *Clark I* test. Nor do we perceive any abuse of discretion in the court's imposition of a cap on the reformed policy. Where, as here, a policy violates a statute, the purpose of reformation is "to assure that coverage will meet the statutory minimums" and "to make the policy express the true intent of the parties." *Id.* at 710 (quotations omitted). Imposing a $200,000 cap satisfies the statutory minimum and the court did not clearly err in finding the cap expresses the true intent of the contracting parties (Prudential and the insured). Among other things, the evidence at trial demonstrated

Prudential always capped APIP benefits; Prudential was seeking to amend its forms to provide a $200,000 cap at the time the policy was issued; the insured knew the APIP benefits offered by Prudential were subject to a cap; and, important in assessing the equities here, this insured declined all offered APIP benefits because he was retired, on a fixed income, and "did not want to purchase or pay any extra premiums for extended benefit coverages that we did not need." (Appellants' App. Vol. I at 301.)

E.       Fincher's Bad Faith and Willful and Wanton Breach of Contract Claims

Prudential refused to pay additional benefits to Fincher after she exhausted the basic PIP benefits available under the policy ($100,000) in September 1994. In her complaint, Fincher asserted claims for breach of the duty of good faith and fair dealing and willful and wanton breach of contract based on Prudential's failure to pay APIP benefits following the Colorado Court of Appeals' decision in *Thompson* (1996) and the Colorado Supreme Court's denial of certiorari in *Brennan* (1998).

To succeed on a claim for bad faith breach of an insurance contract, an insured must prove "that the insurer's conduct was unreasonable and that the insurer either knew that its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable." *Burgess v. Mid-Century Ins. Co.*, 841 P.2d 325, 328 (Colo. Ct. App. 1992). CAARA required an insurer to pay treble damages if its failure to pay was willful and wanton. *See* Colo. Rev. Stat. § 10-4-708(1.8). "An insurer's failure to pay benefits when due is deemed 'willful and wanton' under [CAARA] when it is without justification or in disregard of the insured's rights." *Geiger v. Am. Standard Ins. Co.*, 192 P.3d 480, 483 (Colo. Ct. App. 2008) (quotations omitted).

- 16 -

In granting summary judgment in favor of Prudential, the district court concluded Prudential reasonably believed *Brennan* did not apply retroactively "at least until" this Court's decision in *Clark I* (2003). (Appellants' App. Vol. XII at 4015.) In addition, the court found Prudential reasonably believed *Thompson* was factually distinguishable until *Fincher I* (2003). It declined to consider Prudential's actions following *Fincher I* because Fincher did not amend her complaint to include a claim based on those actions.

Fincher quarrels with these holdings. In particular, she claims the court should have considered Prudential's delay in paying her after *Fincher I*. She argues that, under Colorado law, her claims were cumulative and she did not need to amend her complaint to include Prudential's continuing delay of payment.

Though Colorado law governs our analysis of Fincher's substantive claims, "we are governed by federal law in determining the propriety of the district court's grant of summary judgment." *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001). "We review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

As an initial matter, we reject Fincher's argument that the reasonableness of an insurer's conduct can never be a question of law. We agree with the district court that "[w]hen the rationale for not paying insurance benefits is based on an insurer's

interpretation of the applicable law, the application of the standards for bad faith and willful and wanton breach of contract is a matter of law for the court, and not a question of fact for a jury." (Appellants' App. Vol. XII at 4014.) *See Lopez v. United Fire & Cas. Co.*, 318 Fed. Appx. 628, 637 (10th Cir. 2009) (unpublished) ("Under Colorado law, when an insurer delays paying insurance benefits to pursue legal arguments, the reasonableness of that party's decision is a question of law.") (citing *Tozer v. Scott Wetzel Servs., Inc.*, 883 P.2d 496, 499 (Colo. Ct. App. 1994)).

The real question, then, is whether the court erred in concluding Prudential's conduct was reasonable as a matter of law. "Resort to a judicial forum is not per se bad faith . . . on the part of an insurer regardless of the outcome of the suit. Rather, an insurer may challenge claims which are fairly debatable and will be found to have acted in bad faith only if it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Brandon v. Sterling Colo. Beef Co.*, 827 P.2d 559, 561 (Colo. Ct. App. 1991) (citation omitted); *see also Brennan*, 961 P.2d at 557 ("If . . . an insurer maintains a mistaken belief that the claim is not compensable, it may be within the scope of permissible challenge even if its belief is incorrect.").

Prudential claims that prior to our decision in *Clark I* and *Fincher I*, it reasonably believed Fincher, a pedestrian, was not entitled to APIP benefits because the insured did not select (and pay for) such benefits. Prior to *Brennan*, it was unclear whether APIP coverage had to include pedestrians. It would have been reasonable for Prudential to believe it did not have to offer APIP coverage which included pedestrians and thus, its offer of $150,000 in APIP coverage did not violate CAARA vis-à-vis pedestrians. In

- 18 -

other words, when Prudential offered coverage it was not required to offer (APIP coverage to pedestrians), it is immaterial that the coverage was capped at a lower amount than the statute permitted. However, in *Brennan*, the Colorado Court of Appeals held APIP coverage must include pedestrians. At that point, Prudential knew or should have known it had to offer APIP coverage to pedestrians and such coverage could not be capped below the statutory limit ($200,000). Still, until our decision in *Clark I* (2003), it was unclear whether *Brennan* applied retroactively. It was not until *Clark I* that Prudential knew or should have known the policy at issue here violated CAARA vis-à-vis pedestrians. Thus, Prudential's refusal to pay APIP benefits to Fincher was reasonable as a matter of law at least until 2003.

Fincher contends the court erred in refusing to consider Prudential's conduct following our decision in *Fincher I* (2003) because her claims were continuing and encompassed Prudential's entire course of conduct. Even assuming the district court erred, we agree with Prudential that it had no legal obligation to pay benefits in accordance with the reformed policy until the policy was actually reformed. *See Brennan*, 961 P.2d at 557 (holding insurance company "was not obligated to pay the additional PIP benefits until the policy was reformed"); *see also* 2 *Couch on Insurance* § 26.3 (3d ed. 1995 & Dec. 2001 Update) ("The fact that the insured may be entitled to obtain a reformation of the policy does not impose any obligation upon the insurer to conform to such 'reformed' policy before a court has made such reformation.") (quoted in *Clark I*, 319 F.3d at 1244). The policy was reformed on February 28, 2006, and Prudential paid all the APIP benefits due ($92,500) within two months of that date. *See*

*supra* n.6.  The gap between the effective reformation date (the date of Fincher's

accident) and the date the policy was reformed is accounted for, to a certain degree, by

statutory interest in the amount of $202,000, which Prudential paid in a timely fashion.

*See id.*

F.      Attorneys' Fees

Fincher sought attorneys' fees pursuant to Colo. Rev. Stat. § 10-4-708 which, prior

to its repeal, stated in pertinent part:

> (1) Payment of benefits under the coverages enumerated in section 10-4-
> 706(1)(b) to (1)(e) or alternatively, as applicable, section 10-4-706(2) or (3)
> shall be made on a monthly basis . . . .  In the event that the insurer fails to
> pay such benefits when due, the person entitled to such benefits may bring
> an action in contract to recover the same.
>
> . . . .
>
> (1.7) (a) At least twenty days prior to the commencement of the proceeding
> the party claiming the benefits shall set forth the amount claimed and in
> controversy in a separate document entitled "Notice to insurer of amount
> claimed", which shall include no more than those amounts the insured
> claims are denied or not timely paid by the insurer.  The notice shall also
> specify the amount, if any, claimed for attorney fees.  The notice shall be
> served on all parties no later than twenty days prior to the commencement
> of the arbitration hearing or trial . . . .  If such notice is not timely served,
> there shall be no award of attorney fees to the person claiming benefits,
> unless the arbitrator or court determines that the failure was the result of
> excusable neglect, in which case the arbitration or trial shall be continued to
> a date at least twenty days after the notice is filed.
>
> . . . .
>
> (c) In determining the amount of attorney fees, if any, to be awarded to the
> insured the arbitrator or court shall consider the following:
>
> (I) The award of attorney fees to the insured shall be in direct proportion to
> the degree by which the insured was successful in the proceeding . . . .

The court denied Fincher's motion, concluding this provision applied only to a

claim for basic PIP benefits under Colo. Rev. Stat. § 10-4-706 and not to a claim for APIP benefits under Colo. Rev. Stat. § 10-4-710. Fincher contends the court erred in concluding § 10-4-708 does not apply to a claim for APIP benefits. She claims Colorado courts have held the provisions of § 10-4-708 apply to APIP benefits in the same way they apply to basic PIP benefits.

"Although the ultimate decision to award fees rests within the district court's discretion, any statutory interpretation or other legal conclusions that provide a basis for the award are reviewable de novo." *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997). Normally, where a "statute is unambiguous and does not conflict with other statutory provisions, [the court need] look[ ] no further" than the statute's plain language. *See Frazier v. People*, 90 P.3d 807, 810 (Colo. 2004). However, Fincher is correct that the Colorado Court of Appeals has applied provisions in CAARA which explicitly refer only to basic PIP benefits under § 10-4-706 to APIP benefits under § 10-4-710 as well. *See Brennan*, 961 P.2d at 553-54; *see also Zahner v. Am. Family Mut. Ins. Co.*, 179 P.3d 98, 102-03 (Colo. Ct. App. 2007); *DiCocco v. Nat'l Gen. Ins. Co.*, 140 P.3d 314, 318-19 (Colo. Ct. App. 2006). Given these cases, we are hesitant to predict whether the Colorado Supreme Court would adopt the analysis of the district court here. We need not decide the issue, however, because "[w]e are free to affirm the rulings of a district court on any ground that finds support in the record . . . ." *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000) (quotations omitted).

Even if § 10-4-708 applies here, it only authorizes attorneys' fees if the insured is "successful in the proceeding." Colo. Rev. Stat. § 10-4-708(1.7)(c)(I). The term

- 21 -

"proceeding" is defined in the statute as an "arbitration hearing or trial." *See* Colo. Rev. Stat. § 10-4-708(1.7)(a). Fincher was not "successful in the proceeding" because her claim for APIP benefits was not decided in an arbitration hearing or trial.

Fincher contends "proceeding" should be interpreted more broadly to mean "a legal process that results in the insurer paying to the insured benefits due under the policy, whether before or after entry of judgment." (Appellants'/Cross-Appellees' Response & Reply Br. at 44.) She argues she was "successful in the proceeding" because she received payment of benefits from Prudential. If we were to adopt this argument (despite its obvious lack of statutory support), Fincher's claim for attorneys' fees would still fail. Under § 10-4-708(1.7)(a), the party seeking an award of attorneys' fees must file a notice of claim "[a]t least twenty days prior to the commencement of the proceeding." A party cannot recover attorneys' fees if her notice of claim is untimely unless "the failure was the result of excusable neglect." Colo. Rev. Stat. § 10-4-708(1.7)(a). Fincher filed a notice of claim on September 21, 2007, which was 20 days prior to the scheduled start of trial. She does not claim excusable neglect for her failure to file her notice of claim at an earlier date and thus, her claim fails.

G.    Class Certification

To succeed on a motion for class certification, a prospective class action plaintiff must satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure which requires, *inter alia*, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). In addition, a class action plaintiff must satisfy the requirements of at least one of the subsections of Rule 23(b).

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Under Rule 23(b)(3), a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fincher sought to certify a class of plaintiffs as to her reformation claim. She proposed a class defined as "[a]ll persons who received medical or wage-loss personal injury protection benefits under a Prudential Colorado Car insurance policy, and received those benefits no earlier than August 25, 1992." (Appellants' App. Vol. X at 3402.) The district court denied Fincher's motion to certify concluding she failed to satisfy the requirements of Rules 23(a)(3), (b)(2) and (b)(3). Fincher contends she met all of the requirements of these Rules.[13]

---

[13] We reject Prudential's argument that we lack jurisdiction over Fincher's appeal of the denial of her motion for class certification because she failed to identify that order in her notice of appeal. Fincher's notice of appeal identified the final judgment which is

- 23 -

We review de novo whether the district court applied the correct legal standard in its decision to deny class certification. *See Shook v. El Paso County*, 386 F.3d 963, 967 (10th Cir. 2004) (*Shook I*). "When the district court has applied the proper standard in deciding whether to certify a class, we may reverse that decision only for abuse of discretion." *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988). "An abuse of discretion occurs where the district court misapplies the Rule 23 factors . . . ." *Shook I,* 386 F.3d at 968. The party seeking to certify a class bears the burden of proving that all the requirements of Rule 23 are met. *See id.*

1.      Rule 23(a)(3)

The district court concluded Fincher failed to meet the typicality requirement of Rule 23(a)(3) because her proposed class included people who received personal injury protection under three different forms that were applicable in three different time periods and contained three different flaws. The court found that claims based on flaws other than that which infected the insurance policy at issue here "would differ significantly from Fincher's claims." (Appellants' App. Vol. X at 3405.) Fincher acknowledges there are "some factual differences" in the forms but contends the proposed class members' claims are typical because all of the policies violated CAARA. (Appellants'/Cross-Appellees' Opening Br. at 49.) The district court did not abuse its discretion in rejecting Fincher's argument. While all the policy forms may have violated CAARA, Prudential may have a defense to claims regarding forms other than the one at issue here.

<hr>

sufficient to support review of all earlier orders. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1382 n.7 (10th Cir. 1994).

Reformation is a fact-specific, equitable remedy that would vary based on the particular flaw as well as the particular injury.

Tacitly recognizing the typicality problem, Fincher argues the court "should have created subclasses to address the differences [in the proposed class members' claims], as suggested by Fincher in her reply in support of class certification." (Appellants'/Cross-Appellees' Opening Br. at 50.) The district court did not abuse its discretion in failing to create subclasses. Rule 23(c)(5) provides: "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." A district court may suggest subclassing, but it has no obligation to do so. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 408 (1980). Moreover, even if a court determines subclassing is appropriate, the party seeking class certification bears the burden of constructing subclasses and "is required to submit proposals to the court." *Id.* Fincher did not meet that burden.

2.     Rule 23(b)(2)

The district court concluded Fincher failed to satisfy Rule 23(b)(2) because, while "Fincher is careful to couch the claim of her proposed plaintiff class in terms of declaratory relief . . . [r]ealistically . . . monetary relief is the principal relief sought." (Appellants' App. Vol. X at 3406.) The court explained: "For each such insured, the issue of appropriate monetary relief is highly individualized, and is not appropriate for generalized resolution in a class action." (*Id.*) Fincher contends the court erred because reformation is a form of declaratory relief to which all class members are entitled and even assuming the recovery of benefits is considered part of the reformation claim, such

- 25 -

benefits are "incidental" and "flow directly from the injunctive relief."

(Appellants'/Cross-Appellees' Opening Br. at 53-54.)

The district court did not abuse its discretion in finding Fincher failed to satisfy Rule 23(b)(2). "[W]e have interpreted the rule to require that a class must be amenable to uniform group remedies." *Shook v. Bd. of County Comm'rs of County of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (*Shook II*) (quotations omitted). In *Shook II*, we explained:

> [A] class action may not be certified under Rule 23(b)(2) if relief specifically tailored to each class member would be necessary to correct the allegedly wrongful conduct of the defendant. So, if redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members or groups of class members, the suit could become unmanageable and little value would be gained in proceeding as a class action . . . . In short, under Rule 23(b)(2) the class members' injuries must be sufficiently similar that they can be addressed in an single injunction that need not differentiate between class members.

*Id.* (quotations and citation omitted). Fincher's reformation claim does not satisfy this standard because it involves, in addition to declaratory relief, damages which are likely to be highly individualized.

3. Rule 23(b)(3)

The district court found the proposed class did not meet the requirements of Rule 23(b)(3) because "the issues of benefits and damages are inherently individual, and cannot efficiently be resolved on a class-wide basis." (Appellants' App. Vol. X at 3407.) "Class certification under Rule 23(b)(3) is appropriate only if the questions of law or fact common to the members of the class *predominate* over any questions affecting only

- 26 -

individual members." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1298 (10th Cir. 1999) (Briscoe, J., concurring and dissenting) (quotations omitted). Because of the number of individual issues that would necessarily arise, common questions of law or fact do not predominate and a class action would not be superior to individual suits.

We **DENY** Appellants' Motion to Dismiss Cross-Appeal for Lack of Appellate Jurisdiction and **AFFIRM** the judgment of the district court in all respects.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge